UNITED STATES of America, Plaintiff,

v.

William A. HALEY, Jr., Defendant.

No. 87–80865–DT.

United States District Court,
E.D. Michigan, S.D.

June 16, 1988.

Ross Parker, Lynn A. Helland, U.S. Attys. Office, Detroit, Mich., for plaintiff.

Elbert L. Hatchett, Pontiac, Mich., for defendant.

### SENTENCING MEMORANDUM

ZATKOFF, District Judge.

On November 25, 1987, the Defendant William A. Haley, Jr. was indicted on eleven counts for violating various federal criminal laws. At the time of the indictment, the Defendant was a District Judge with the 36th District Court in the State of Michigan. In its most rudimentary form, the Defendant was charged with soliciting and accepting a series of bribes to affect the outcome of cases within his court. (i.e. to "fix" the tickets). "This most serious of crimes attacks the foundation of our judicial system and the faith of citizens in impartiality." *United States v. Brennan*, 629 F.Supp. 283, 286 (E.D.N.Y.), *aff'd* 798 F.2d 581 (2nd Cir.1986).

On April 14, 1988, pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, the Defendant pled guilty to Counts Two and Eleven of the indictment. Count Two alleges that Defendant violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), 1963 (Hereinafter referred to as RICO). To violate this statute, the Government must prove:

(1) The existence of an enterprise which affects interstate or foreign commerce;

(2) That the Defendant associated with the enterprise;

(3) That the Defendant participated in the conduct of the enterprises affairs;

(4) That the participation was through a pattern of racketeering activity.

18 U.S.C. § 1962(c); *United States v. Sinito,* 723 F.2d 1250, 1260 (6th Cir.1983). Based on the Defendant's testimony under oath during his plea, the Court found that the requisite elements had been met.

Count Eleven of the indictment alleges that the Defendant prepared and presented to the Internal Revenue Service a false United States Income Tax Return Form 1040 for the calendar year 1986. This is a violation of 26 U.S.C. § 7206(2). The indictment alleges that the Defendant failed to report on the 1986 form approximately $3,250.00 in income he received as a result of his unlawful receipt of monies in exchange for his favorable treatment of matters before him in his capacity as a District Judge. This statute provides:

Any person who—

(2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present return, affidavit, claim, or document shall be guilty of a felony and, upon conviction thereof;

shall be fined not more than $100,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

26 U.S.C. § 7206(2)(1967 and West Supp. 1988). Based on the Defendant's testimony under oath given during his plea, the Court found that Defendant had willfully violated this statute.

The Rule 11 plea agreement states that in exchange for his plea, the Defendant subjects himself to the maximum penalty imposed by each statute pursuant to 18 U.S.C. § 4205(b)(2). The maximum penalty for violating Count Two, 18 U.S.C. § 1962(c), is twenty (20) years imprisonment and/or $250,000 fine. 18 U.S.C. § 1963(a) (West Supp.1988). The maximum penalty for violating Count Eleven, 26 U.S. C. § 7206(2) is three (3) years imprisonment and/or a $100,000 fine. 26 U.S.C. § 7206 (West Supp.1988). In exchange for the plea, the government agreed to dismiss Counts One (1) and Three (3) through Ten (10) of the indictment. The Defendant also agrees to a special assessment fee of $100 to be charged against him in addition to any fine imposed.

Due to the nature of this case, it is necessary to set forth an explanation of how the Court decided on the sentence imposed. The Court finds the matter of *United States v. Brennan, supra,* and Chief Judge Jack Weinstein's analysis therein, extremely beneficial in determining the appropriate sentence when dealing with such a high profile and sensitive case. Therefore, the Court will adopt and follow the *Brennan* format.

## I. THE CRIMES

As stated previously, the Defendant has pled guilty to two counts of the indictment admitting that he accepted a series of bribes to fix traffic ticket cases in his court. Set forth below is a table compiled from Count Two of the indictment which briefly describes nineteen acts committed by the Defendant:

| Date | Name | Offense | Amount of the Bribe |
|------|------|---------|---------------------|
| April 22, 1985 | Mijbil Zakar | Driving while under the influence | $ 500 |
| July 15, 1985 | Ronny Sitto | Traffic tickets | $ 200 |
| Oct. 31, 1985 & Nov. 4, 1985 | Tania Sitto | Improper Left Turn & Speeding | $ 250 |
| Nov. 4, 1985 & Dec. 9, 1985 | Ronny Sitto | Speeding | $ 300 |
| Dec. 5–9, 1985 | Alida Sitto; Eileen Sitto; Ghassan Brikho | Running red light; Running red light; Failure to stop. | $ 300 |

| Date | Name | Offense | Amount of the Bribe |
|------|------|---------|---------------------|
| Feb. 4–27, 1986 | Maued Ankawi | Speeding | $ 100 |
| Feb. 4, 1986 | Shawn Dabish | Speeding | $ 300 |
| April 8, 1986 | | | |
| April 8, 1986 | Nabeel Mansour | Driving wrong way on a one-way street | $ 50 |
| July 17–25, 1986 | Mijbil Zakar | Speeding | $ 100 |
| August 14, 1986 | Jimmy Semaan | Solicitation to engage in sexual acts | $ 500 |
| Sept. 10, 1986 | Madhat Mansor | Unlawful possession of a firearm and unlawful sale of fireworks | $ 300 |
| Oct. 8, 1986 | Stephen Belser | Suspended driver's license | $1,500 |
| Oct. 20, 1986 | Laverne Chism & Bottom's Up Liquor Store | Selling alcohol to minor | $ 500 |
| Oct. 29, 1986 | Yacoub Hermiz | Driving while under the influence, indecent and obscene conduct in public, driving without headlights, driving without a vehicle registration, failure to comply with seatbelt law, refusing to take breathalyzer test. | $ 700 |
| Nov. 12, 1986 | Terrence Hayward Hardy and Tracy Lynn Hardy | Blocking traffic and failing to provide evidence of insurance. | $ 400 |
| Dec. 8, 1986 | Brian J. Moore | Suspended driver's license | $1,000 |
| Dec. 8, 1986 | David Solomon | Offer to engage the services of a prostitute | $ 300 |
| Nov. 12, 1986 | Dennis Waney | Failure to have driver's license on person, driving with expired plates, driving without proof of insurance, making a prohibited turn, driving with suspended license, defective equipment and speeding | $1,000 |
| | Kevin Yancey & Kerry Yancey | Driving wrong way and failure to comply with seatbelt law | |
| Jan. 14–20, 1987 | Tharwat Jago | Improper U–Turn | $ 100 |

It is clear from this list that the underlying offenses did not only involve traffic tickets, but involved some of the more serious concerns of Michigan residents and motorists.

Unlike *Brennan, supra,* this Court will not endeavor on a detailed description of each crime. The Court spent numerous hours reviewing audio and video tapes involved in the Government's investigation of this Defendant. The Court can only conclude that the Defendant knowingly and willfully engaged in the alleged activity.

## II. RESTITUTION

■ The Probation Department recommends that the Defendant forfeit $6,500.00. This amount represents the value the Defendant received in exchange for handling the tickets. Under 18 U.S.C. § 1963(a)(West Supp.1988), a person convicted under the RICO statute forfeits to the United States any interest he has received; this includes proceeds and profits derived from racketeering. *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1984). The total amount of money received by Defendant under Count Two of the indictment is $8,000.00. However, since the Government seeks the lower amount, the Court orders the Defendant to forfeit $6,950.00 to the United States.

## III. SERIOUSNESS OF THE CRIME

There is no question that the crime of bribery is a very serious offense. As addressed in *Brennan, supra,* judges have been forbidden from taking bribes since early biblical times. 629 F.Supp. at 299. Although expressly forbidden, occasionally judges fall into this nefarious activity. The recent trend has been to punish these judges harshly. Much of this is due to increased penalities provided by law and also that "the law enforcement system and the public are becoming less tolerant of this crime." *Id.* at 300.

■ In *Brennan, supra,* Chief Judge Weinstein set forth a table identifying several judges who recently were convicted for violating various federal statutes. *Id.* at 300–301. That table focused on the sentences received by the judges. In this matter, the Court is concerned with the sentences given judges for comparable offenses. For example, in reference to that table, the Court notes that judges found guilty of crimes other than bribery received relatively lighter sentences. However, judges convicted of bribery and RICO violations received greater penalties—none lower than ten (10) years in prison.[1] The difference appears to be that if a judge

violates a basic law similar to those committed by the general public, his sentence should be commensurate with those regularly imposed. In other words, his position is merely incidental to the crime committed. Bribery, however, is a crime against the office and the judicial institution and must be treated more harshly.

This District has had the opportunity to address matters concerning judicial misconduct. In 1983, the Government prosecuted Judge Evan Callanan, Sr., a judge for the 18th Judicial District Court of the State of Michigan. Judge Callanan was accused of accepting bribes in excess of $5,500 to influence his decision on matters which came before him. Judge Callanan was found guilty by a jury for violating RICO (18 U.S.C. § 1962(c)), conspiracy to violate RICO (18 U.S.C. § 1962(d)), and mail fraud (18 U.S.C. § 1341). On October 14, 1983, the Honorable Horace Gilmore sentenced Judge Callanan to serve ten (10) year sentences for each of the RICO violations and five (5) years for the mail fraud. The sentences were to run concurrently.

Even more recently, the Government has prosecuted judges for alleged corruption in the Circuit Court of Cook County, Illinois. This matter, more commonly known as "Operation Greylord," has led to the conviction of eight (8) judges and several cases are still pending. As can be seen from the following table, the sentences imposed have been quite severe.

| Judge | Sentence |
|---|---|
| John J. Devine | 15 years |
| Reginald J. Holzer | 18 years concurrent new trial pending 18 U.S.C. §§ 1962, 1341 & 1951 |
| Richard F. LeFevour | 12 years 26 U.S.C. § 7206, 18 U.S.C. §§ 1962, 1341 & 1951 |
| John H. McCollum | 11 years/5 years probation |
| John M. Murphy | 10 years, 18.1341–F, 18.1962–D |
| Wayne W. Olson | 12 years CAG/5 yrs. probation $35,000 fine 18 U.S.C. §§ 1962, 1341 & 1951 |
| John F. Reynolds | 10 years 18 U.S.C. §§ 1962, 1341 & 1951 |
| Raymond C. Sodini | 8 years/5 years probation 18 U.S.C. §§ 1962, 1341 & 1951 |
| Roger Seaman | Pending |

---

1. One Judge was convicted for crimes committed before taking office and thus his sentence will not be considered. *Id.* at 301.

| Judge | Sentence |
|---|---|
| Frank Salerno | 9 years/5 years probation, $10,000 fine, 300 hours Community Service, 18.1951–F |
| Martin Hogan | Pending |
| J.J. McDonnell | Pending |
| Daniel Glecier | Pending |
| Francis Maher | Pending |
| Michael McNulty | 3 years/3 years probation, $15,000 fine (only tax case and he waived the statute of limitations) 600 hours Community Service |

The Court notes that the attorneys convicted under Operation Greylord received substantially lower sentences, the highest being eight (8) years.

In *Brennan, supra,* Judge Weinstein imposed a ten (10) year sentence against the defendant judge who was found guilty on all twenty-six (26) counts of the indictment. The judge was to spend five (5) years in prison followed with five (5) years of probation. The defendant was also fined $210,-000 and required to forfeit the bribe money he received, $14,000. 629 F.Supp. at 307.

In evaluating all of this information, the Court finds that circumstances where a judge had accepted a bribe to be most relevant to the determination that must be made herein. Bribery cases involve the sale of the judicial office and are absolute abuse of this position. Admittedly, this is an act that the Defendant has committed. Thus, the sentence imposed should be comparable.

## IV. CONSIDERATIONS IN ASSESSING PENALTIES

"No crime is more corrosive of our institutions [than a judge accepting a bribe]. In the final analysis the judicial system depends upon the trust of the people and the impartiality of judges." *Id.* at 302. The public *must* have trust in the judicial system. Once this trust is lost, the system becomes inoperable. Further, justice cannot and must not be sold to the highest bidder.

In considering the proper sentence to impose, the Court notes that individual deterrence is not a factor. This Defendant has lost his judgeship and will lose his law license. Further, he will not be able to maintain public office again. His punishment in this regard is total. In addition,

general deterrence is not an issue either. Judges act out of a sense of duty and fairness in fulfilling their public obligations. The penalty allotted will not affect their responsibilities. Those judges who do or might consider what sanctions could be imposed if they accept a bribe to influence their decision very simply do not belong on the bench.

The focus of the sentence imposed herein must derive from the impact this type of crime has on the community and on the judicial system. Judges are placed in a high, if not the highest, position of trust by the public. Their word is often the last say on a particular subject, resolving disputes fairly and according to the law. They are looked to as the arbiter of rights and privileges for all persons who come before them. This is a calling of the highest nature, the opportunity to serve your peers and your country.

Bribery is neither a crime of passion nor, as in this case, a momentary lapse of personal judgment. It is a crime of greed, pure and simple. Accepting money for favorable treatment violates all sense of moral decency and public loyalty. Favoritism based on the power of the pocketbook strikes at the very heart of public trust. Without this trust, the system crumbles. Thus, the judicial system itself cannot tolerate the act of one of its members in violating this trust. It must continually act swiftly in maintaining the integrity on which it is built. Internal preservation is mandatory.

The Court notes that other individuals have been convicted relative to the improprieties which have occurred in the 36th District Court. This Court itself had the duty to sentence one of those individuals. The Court imposed the maximum sentence agreed to in the Rule 11 plea agreement—five (5) years. That individual was a middleman in these bribery transactions, dealing between a judge and the person who received the ticket that was to be "fixed."

Now, however, the Court is faced with the sentence of a judge, a person who knows his duties and has sworn to uphold the public trust. A person who has solic-

ited votes from the electorate ensuring them that he is able to uphold and maintain the integrity that the office demands, requires and imposes. By Defendant's own admission in Court, that trust has been violated. In addressing this impropriety of the highest nature, the Court adopts the following language from *Brennan, supra:*

> It is important, nevertheless, for the public to realize that white collar criminals will not be dealt with less harshly than are those criminals who have neither the wit nor the position to commit crimes other than those of violence.
>
> Having received the great boon of high office, public officials must be prepared to pay the high cost of their own acts of betrayal. The net result may well be that a judge convicted of a crime will be treated more harshly than one who commits an equivalent offense in a corporate or other private entity. This is a hazard of the position.
>
>    \*   \*   \*   \*   \*   \*
>
> In addition to eroding the public's perception of fairness in justice and faith in the judiciary, a crime of this nature has an adverse impact on the exercise of discretion by at least some judges.
>
>    \*   \*   \*   \*   \*   \*
>
> The greater the trust placed in a public official, the more serious a deviation from standards of fidelity. Judges should be punished more severely for taking bribes than are others.

*Id.* at 302, 304. The Court cannot conceive of a more serious crime to the judicial system than a judge accepting a bribe to affect the outcome of a matter before him. Nothing can destroy the system as easily and as rapidly. The judicial system and the public's trust strenuously demand a penalty more severe than the other defendants implicated in this outrageous set of circumstances involving the 36th District Court.

## V. OTHER FACTORS

The Court has considered many additional factors relevant to the proper sentence that must be imposed. Initially, the Court notes that it has received many letters from family, friends and colleagues of the Defendant. Essentially, these letters assert that the Defendant has always been an upright citizen and family man. Other than the present facts, the Court has no opportunity to dispute these assertions. They request that the Court forgive the Defendant for his lack of judgment and impose a light sentence. The Court can only commend the Defendant on his choice of friends and their loyalty.

The Court takes note that the bribery charge involved herein is not an isolated incident. Indeed, Defendant has pled to being involved in a racketeering enterprise. Count Two alleges eighteen (18) incidences where the Defendant accepted a gratuity for favorable treatment. Further, the Court has had the opportunity to review the Government's materials surrounding this investigation and can only conclude that Defendant was engaged in continuous solicitation and acceptance of money in exchange for the powers of his office.

Based on the above, the Court concludes the Defendant must have let the pressures of the position get the better of him. He was able, however, to shield his impropriety from those who obviously cared for him.

## VI. SENTENCE

As is the usual practice in this District, the Court confers with two (2) other judges of this District and with the probation officer assigned to the case, in private, to discuss the possible sentence to be imposed. This is commonly known as a sentencing council. Each member of the sentencing council has the opportunity to express their views and give recommendations. A sentencing council was convened for this case.

No *final* decision was reached at the conclusion of this sentencing council since Defendant is entitled to his allocution. Although each member of the council gave a recommendation, the responsibility of imposing the sentence is borne entirely by this Court.

■ After consideration of all matters herein and intending to have sentences imposed for such conduct to be uniform not only in this District but throughout the

country, it is the sentence of this Court that Defendant be imprisoned for ten (10) years, on Count Two, of the indictment under 18 U.S.C. § 4205(b)(2) and imprisoned for three (3) years on Count Eleven of the indictment under 18 U.S.C. § 4205(b)(2). These sentences shall run concurrent. The Defendant is turned over to the custody of the Attorney General of the United States.

Defendant is also ordered to pay all income taxes due to United States based on his plea under Count Eleven. Moreover, Defendant shall pay the mandatory special assessment of $100.00. Finally, Defendant is to forfeit the full amount he received in bribes that the Government seeks under RICO, namely $6,950.00.

## VII. CONCLUSION

The Defendant has admitted to committing crimes which strike at the heart of the judicial system and the public's trust from which it derives. The Court finds that the sentence it has imposed properly addresses these concerns and befits the actions of the Defendant.

IT IS SO ORDERED.